IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| ORALEAN WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| CITY OF CHICAGO, a Municipal | ) | |
| Corporation, and RICHARD õBUCKö | ) | |
| ADAMS, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, ORALEAN WILLIAMS, by and through her attorney, Seth R. Halpern of MALKINSON & HALPERN, P.C., and complains of Defendants CITY OF CHICAGO, a municipal corporation, and RICHARD õBUCKö ADAMS, an individual, as follows:

### NATURE OF THE CASE

1.     Plaintiff, ORALEAN WILLIAMS, an African-American female, brings this action against defendants CITY OF CHICAGO and its employee, RICHARD õBUCKö ADAMS, to remedy discrimination and harassment, on the basis of race and gender, and retaliation in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*., (õTitle VIIö), and 42 U.S.C. 1981 (õSection 1981ö), and 42 U.S.C. 1983 (õSection 1983ö). Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, attorneysø fees, costs, and other appropriate legal and equitable relief.

### PARTIES AND JURISDICTION

2.     Plaintiff, ORALEAN WILLIAMS (hereinafter "WILLIAMS" or "Plaintiff"), is an African-American female citizen of the United States and presently resides in the City of Chicago, County of Cook, State of Illinois.

3.     Defendant CITY OF CHICAGO (hereinafter "CITY") is an Illinois municipal corporation, doing business in, and maintaining an office and motor vehicle yard of the Chicago Department of Streets and Sanitation at 52nd Street and Oakley Avenue in the City of Chicago, County of Cook, State of Illinois ("yard" or "52nd and Oakley Yard"). CITY is engaged in an industry affecting commerce and, at all times pertinent hereto, was an employer within the meaning of 42 U.S.C. §2000e(b).

4.     Defendant, RICHARD "BUCK" ADAMS, (hereinafter "ADAMS") (non-African American), is a citizen of the United States and resident of the State of Illinois.  At all relevant times hereto, ADAMS is, and was, an agent, servant and/or employee of CITY, within the meaning of 42 U.S.C. §2000e(b), and was employed by CITY in the Department of Streets and Sanitation as Yard Supervisor at the facility located at the 52nd and Oakley Yard.  Upon information and belief, at all relevant times, ADAMS possessed and was delegated final policymaking authority for personnel issues arising within the Department of Sanitation at the 52nd and Oakley Yard.

5.     This action is brought by plaintiff against CITY and against ADAMS, individually.

6.     At all times relevant herein, CITY, and ADAMS (hereinafter collectively referred to as "the Defendants"), were acting under color of law pursuant to their authority and grants of power under the United States Constitution and the Constitution and statutes of the State of Illinois.

7.     This court has jurisdiction of this case pursuant to 42 U.S.C. §§1981, and 1983, and 1988, 42 U.S.C. §2000e, *et seq*, as amended by the Civil Rights Act of 1991, and 28 U.S.C. §§1331, 1343(4) and 1367.

8. This action properly lies in this district pursuant to 28 U.S.C. §1391 because the claims arose in this judicial district.

9. Plaintiff has complied with all administrative prerequisites by filing with the Illinois Department of Human Rights (IDHR) a timely Charge of Discrimination based on race and gender which was also cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").  A copy of the Charge of Discrimination is attached hereto as Exhibit A.

10. On or about June 29, 2016, Plaintiff received her Notice of Right to Sue from the EEOC, attached hereto as Exhibit B.

## GENERAL ALLEGATIONS

11. Plaintiff is an African-American female, and a member of multiple protected classes.

12. In approximately 2000, CITY hired Plaintiff as a Motor Truck Driver ("MTD") in the Department of Streets and Sanitation.  For much of her employment, Plaintiff drove a sanitation truck and was stationed at the yard located at 52nd Street and Oakley Avenue from approximately 2008 to July of 2015.

13. In approximately May of 2014, Plaintiff was elevated to the position of "E-Person", which was a prestigious office and administrative position at the yard.  At that time, she came under the direct, daily supervision of defendant, ADAMS.

14. Upon information and belief, at all relevant times, ADAMS possessed and was delegated final policymaking authority for personnel issues arising within the Department of Streets and Sanitation at the 52nd and Oakley Yard.

15. During the course of her employment at CITY, plaintiff performed all of her duties and responsibilities in a satisfactory manner.

16.     Beginning almost immediately after her appointment to the "E-Person" position, and continuing consistently through July of 2015 when she was finally transferred and thereafter, Plaintiff was and continues to be victim of a pattern and practice of race and gender discrimination and harassment, disparate treatment as to the terms and conditions of employment based upon race and gender, and retaliation for complaining about discrimination and harassment, while employed at the Chicago Department of Streets and Sanitation.

17.     Specifically, beginning in or around May of 2014 and continuing until July of 2015, ADAMS continually and on a daily basis, commonly in the presence of multiple Streets and Sanitation employees, engaged in gender discriminatory and harassing behavior in the workplace directed toward Plaintiff, that included but is not limited to:

a.      Subjecting Plaintiff to different and demeaning terms and conditions of employment than her similarly situated male counterparts, including prohibiting her from entering the "shop" at the yard to check on the sanitation trucks despite the fact that her job required her to do so, prohibiting Plaintiff from using her cell phone while working while allowing all other similarly situated males to do so, refusing to provide or arrange for appropriate E-Person job training and forcing Plaintiff to log incoming trucks while standing outdoors, instead of in the office window, even in the harshest weather conditions;

b.      Repeatedly commenting derogatorily to Plaintiff about the fact that she was a woman and as such, should not have the E-Person position and stating that "women should be at home";

c.      Repeatedly screaming and adopting a demeaning tone toward Plaintiff;

d.      Repeatedly using the exclamation "Women!" when walking away from Plaintiff

following discussions;

e.     Making derogatory comments to Plaintiff, such as "You women are worthless", during work hours and in the presence of other employees;

f.     Indicating and stating that the Plaintiff was "nothing a bullet won't cure";

g.     Implying that Plaintiff would never be good at her job unless she learned to lay on the ground and twist wires, while never indicating that any similarly situated male E-Person was required to do so; and

h.     Making other gender derogatory and/or disparaging remarks to, about, and in the presence of Plaintiff.

18.     Each of these comments, remarks, or gestures was not an isolated incident, but is an example of the type of discriminatory and gender charged comments and conduct by ADAMS, that were an everyday occurrence at Plaintiff's workplace during the relevant period of her tenure working in the office at the yard.

19.     Each of the aforementioned repetitive actions created a gender-based hostile work environment for Plaintiff.

20.     Additionally, beginning in or around May of 2014 and continuing until July of 2015, ADAMS, who is not African-American, continually and on a daily basis, commonly in the presence of multiple Streets and Sanitation employees, engaged in racially discriminatory and harassing behavior in the workplace directed toward Plaintiff and others, that included but is not limited to:

a.     Repeatedly making reference to African-American employees as "you black people" in a derogatory manner;

b.     Repeatedly using the term "nigga" or "niggas" in reference to African American

employees;

c.   Ordering Plaintiff to "get a mop and start mopping" because "black people are good for mopping";

d.   Telling Plaintiff that she knew how to "handle" her "people", meaning black employees;

e.   Having a "swear jar" in the office in which an employee was charged $5 for using the word "nigger";

f.   Repeatedly using the word "nigger" in derogatory fashion while in the office and in the presence of Plaintiff;

g.   Stating that black people should not have the E-Person position, referring to Plaintiff and another African-American E-Person;

h.   Subjecting Plaintiff to different and demeaning terms and conditions of employment than her similarly situated non-African-American counterparts, including prohibiting her from entering the "shop" at the yard to check on the sanitation trucks despite the fact that her job required her to do so, prohibiting Plaintiff from using her cell phone while working while allowing all other similarly situated African American employees to do so, refusing to provide or arrange for appropriate E-Person job training and forcing Plaintiff to log incoming trucks while standing outdoors, instead of in the office window, even in the harshest weather conditions;

i.   Telling Plaintiff that Black women were worthless and other similar comments;

j.   Stating out loud in Plaintiff's presence that he did not want his daughter to date a Black man;

k.   Allowing at least one co-worker to refer to Plaintiff as "the Black E-Woman" without repercussion; and

l.   making other racially derogatory and/or disparaging remarks to, about, and in the presence of Plaintiff and subjecting her to other differing terms and conditions than non-African American employees.

21.   Each of these comments, remarks, or gestures was not an isolated incident, but is an example of the types of discriminatory and racially charged comments and conduct by ADAMS, and others, that were an everyday occurrence at Plaintiff's workplace during the relevant period of her tenure working in the office at the yard.

22.   Each of the aforementioned repetitive actions created a racially hostile work environment for Plaintiff.

23.   Plaintiff complained about the aforementioned racial and gender discrimination to an individual supervisor at the downtown Chicago office of the Department of Streets and Sanitation on several occasions during the early half of 2015 ("Jay")[1], who said he would talk to ADAMS, but Plaintiff noticed no difference in ADAMS' behavior and, therefore, no effective disciplinary action was taken.

24.   Plaintiff further reported ADAMS' aforementioned behavior to several other supervisors on site, as well as the 16th Ward Superintendent, Nate Wilson.  She then prepared a written complaint and provided it to disciplinary officer, Katrika Scott.  No immediate or effective action was taken.  Thereafter, Plaintiff was told to and did eventually report the misconduct to Janet Gay, Administrative Supervisor, in the downtown office of the Department of Streets and Sanitation.

---

[1] While Plaintiff only referred to this individual as "Jay", upon information and belief, his last name is Keag.

25. After Plaintiff's reports of discrimination, Defendants began a course of retaliation against Plaintiff that included but is not limited to adversely affecting the terms and conditions of her employment. For example, ADAMS responded to her complaints by falsely disciplining Plaintiff for "disrupting his yard".

26. Plaintiff was thereafter called into a meeting downtown with Streets and Sanitation supervisory personnel including Janet Gay, Josie Cruz (Deputy Director) and another gentlemen ("Ray") and, in further retaliation for her complaints, was relieved of her duties as E-Person and reassigned to another yard, where, instead of having an administrative position, she was sent back to the motor pool to drive a sanitation truck. No option was offered to her whereby she could have stayed in her more desirable and prestigious position of E-Person and ADAMS would be reassigned to another yard. To date, she remains reassigned to the motor pool.

27. At all relevant times, Janet Gay, Josie Cruz, "Jay" and "Ray" were/are agents, servants and/or employees of CITY, within the meaning of 42 U.S.C. §2000e(b), and were employed by CITY as Directors and/or Administrators of the Department of Streets and Sanitation. Upon information and belief, at all relevant times, each possessed and was delegated final policymaking authority for personnel issues arising within the Department of Streets and Sanitation.

28. Janet Gay, Josie Cruz, "Jay", "Ray" and ADAMS never adequately responded to plaintiffs' complaints and thereby approved, condoned and/or turned a blind eye to the discrimination and harassment by ADAMS and described, herein.

29.     As a result of the unlawful and willful acts complained of herein, plaintiff has suffered loss of wages and other compensation, as well as severe emotional distress, embarrassment, humiliation, and mental anguish.

## COUNT I-CITY
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

1-29.   Plaintiffs repeat and reallege Paragraphs 1-29 above, as paragraphs 1-29 of this Count I, as though fully rewritten, herein.

30.     Beginning in or around May of 2014 and continuing until July of 2015, ADAMS continually and on a daily basis, commonly in the presence of multiple Streets and Sanitation employees, engaged in and allowed racially discriminatory and harassing behavior in the workplace directed toward Plaintiff and others, that included but is not limited to:

a.     Repeatedly making reference to African American employees as õyou black peopleö in a derogatory manner;

b.     Repeatedly using the term õniggaö or õniggasö in referring to African American employees;

c.     Ordering Plaintiff to õget a mop and start moppingö because õblack people are good for moppingö;

d.     Telling Plaintiff that she knew how to õhandleö her õpeopleö, meaning black employees;

e.     Having a õswear jarö in the office in which an employee was charged $5 for using the word õniggerö;

f.     Repeatedly using the word õniggerö in derogatory fashion while in the office and in the presence of Plaintiff;

g.     Stating that black people should not have the E-Person position, referring to

Plaintiff and another African American E-Person;

h.     Subjecting Plaintiff to different and demeaning terms and conditions of employment than her similarly situated male counterparts, including prohibiting her from entering the "shop" at the yard to check on the sanitation trucks despite the fact that her job required her to do so, prohibiting Plaintiff from using her cell phone while working while allowing all other similarly situated black males to do so, refusing to provide or arrange for appropriate E-Person job training and forcing Plaintiff to log incoming trucks while standing outdoors, instead of in the office window, even in the harshest weather conditions;

i.     Telling Plaintiff that Black women were worthless and other similar comments;

j.     Stating out loud in Plaintiff's presence that he did not want his daughter to date a black man;

k.     Allowing at least one co-worker to refer to Plaintiff as "the Black E-Woman" without repercussion; and

l.     making other racially derogatory and/or disparaging remarks to, about, and in the presence of Plaintiff and subjecting her to other differing terms and conditions than non-African American employees.

31.     Each of these comments, remarks, or gestures was not an isolated incident, but is an example of the types of discriminatory and racially charged comments and conduct by ADAMS, and others, that were an everyday occurrence at Plaintiff's workplace during the relevant period of her tenure working in the office at the yard.

32.     CITY by and through its agents, servants and employees, including but not limited to ADAMS, acted with discriminatory intent with regard to the events described herein.

33. At all relevant times, plaintiff performed her job in a satisfactory manner.

34. Similarly situated non-African-American employees were not subjected to racially discriminatory and harassing behavior.

35. The effect of the Chicago Department of Streets and Sanitation's actions, policies and practices as described above has been to create an offensive, humiliating and racially hostile work environment throughout plaintiff's tenure at the 52nd and Oakley Yard.

36. The aforementioned incidents constituted an unlawful employment practice in violation of Sec. 703(a) of Title VII, 42 U.S.C. Sec. 2000e-2.

37. As a further result of the above stated actions, plaintiff was forced to endure a racially hostile work environment during her employment at the 52nd Street and Oakley Yard and has been deprived of income in the form of wages and other benefits due her, solely because of her race, in an amount to be proved at trial, and has suffered, and continues to suffer severe emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, plaintiff ORALEAN WILLIAMS, respectfully prays that this Court enter judgment in her favor and against CITY OF CHICAGO:

(a) Declaring that the conduct of City of Chicago described herein is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, *et seq.*;

(b) Awarding plaintiffs any salary, with interest, she lost as a result of City of Chicago's conduct;

(c) Awarding plaintiff compensatory damages, including for emotional distress, humiliation, embarrassment mental anguish;

(d) Awarding plaintiff reasonable attorneys' fees and costs under 42 U.S.C. Sec. 2000(e)-5(k) and 42 U.S.C. §1988; and

(e) Awarding plaintiff such other and further relief as this Court deems proper and just.

## COUNT II-CITY
## GENDER DISCRIMINATION UNDER TITLE VII

1-29.   Plaintiffs repeat and reallege Paragraphs 1-29 of Count I, as paragraphs 1-29 of this Count II, as though fully rewritten, herein.

30.   Beginning in or around May of 2014 and continuing until July of 2015, ADAMS continually and on a daily basis, commonly in the presence of multiple Streets and Sanitation employees, engaged in gender discriminatory and harassing behavior in the workplace directed toward Plaintiff, that included but is not limited to:

a.   Subjecting Plaintiff to different and demeaning terms and conditions of employment than her similarly situated male counterparts, including prohibiting her from entering the "shop" at the yard to check on the sanitation trucks despite the fact that her job required her to do so, prohibiting Plaintiff from using her cell phone while working while allowing all other similarly situated males to do so, refusing to provide or arrange for appropriate E-Person job training and forcing Plaintiff to log incoming trucks while standing outdoors, instead of in the office window, even in the harshest weather conditions;

b.   Repeatedly commenting derogatorily to Plaintiff about the fact that she was a woman and as such, should not have the E-Person position and stating that "women should be at home";

c.   Repeatedly screaming and adopting a demeaning tone toward Plaintiff;

d.   Repeatedly using the exclamation "Women!" when walking away from Plaintiff following discussions;

e.   Making derogatory comments to Plaintiff, such as "You women are worthless", during work hours and in the presence of other employees;

f. Indicating and stating that the Plaintiff was "nothing a bullet won't cure";

g. Implying that Plaintiff would never be good at her job unless she learned to lay on the ground and twist wires, while never indicating that any similarly situated male E-Person was required to do so; and

h. Making other gender derogatory and/or disparaging remarks to, about, and in the presence of Plaintiff.

31. Each of these comments, remarks, or gestures was not an isolated incident, but is an example of the types of discriminatory and gender charged comments and conduct by ADAMS, that were an everyday occurrence at Plaintiff's workplace during the relevant period of her tenure working in the office at the yard.

32. CITY by and through its agents, servants and employees, including but not limited to ADAMS, acted with discriminatory intent with regard to the events described herein.

33. At all relevant times, plaintiff performed her job in a satisfactory manner.

34. Similarly situated male employees were not subjected to gender-based discriminatory and harassing behavior.

35. The effect of the Chicago Department of Streets and Sanitation's actions, policies and practices as described above has been to create an offensive, humiliating and racially hostile work environment throughout plaintiff's tenure at the 52nd and Oakley Yard.

36. The aforementioned incidents constituted an unlawful employment practice in violation of Sec. 703(a) of Title VII, 42 U.S.C. Sec. 2000e-2.

37. As a further result of the above stated actions, plaintiff was forced to endure a gender-based hostile work environment during her employment at the 52nd Street and Oakley yard and has been deprived of income in the form of wages and other benefits due her, solely

because of her race, in an amount to be proved at trial, and has suffered, and continues to suffer severe emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff ORALEAN WILLIAMS, respectfully prays that this Court enter judgment in her favor and against CITY OF CHICAGO:

 (a) Declaring that the conduct of City of Chicago described herein is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, *et seq.*;

 (b) Awarding plaintiff any salary, with interest, she lost as a result of City of Chicago's conduct;

 (c) Awarding plaintiff compensatory damages, including for emotional distress, humiliation, embarrassment mental anguish;

 (d) Awarding plaintiff reasonable attorneys' fees and costs under 42 U.S.C. Sec. 2000(e)-5(k) and 42 U.S.C. §1988; and

 (e) Awarding plaintiff such other and further relief as this Court deems proper and just.

## COUNT III-CITY
## IMPERMISSABLE RETALIATION UNDER TITLE VII

Plaintiffs repeat and reallege Paragraphs 1-29 of Count I as paragraphs 1-29 of this Count III, as though fully rewritten, herein.

30. Commencing in early 2015, CITY, by and through its agents, servants and employees, including but not limited to ADAMS, began a course of retaliation against Plaintiff that included but is not limited to adversely affecting the terms and conditions of her employment. For example, ADAMS responded to her complaints of discrimination against him by disciplining Plaintiff for "disrupting his yard".

31. Plaintiff was thereafter called into a meeting downtown with Streets and Sanitation supervisory personnel Janet Gay, Josie Cruz (Deputy Director) and another gentlemen

("Ray") and, in further retaliation for her complaints, was relieved of her duties in July of 2015 as E-Person and reassigned to another yard, where, instead of having an administrative position, she was sent back to the motor pool to drive a sanitation truck. No option was offered to her whereby she could have stayed in her more desirable and prestigious position of E-Person and ADAMS would be reassigned to another yard. To date, she remains reassigned to the motor pool.

32.    Upon information and belief, as a result of her reassignment away from her administrative position, Plaintiff has lost certain opportunities for advancement within the Department of Streets and Sanitation.

33.    CITY's course of conduct toward plaintiff showed a willful and/or reckless disregard of Plaintiff's rights to employment free from impermissible discriminatory and retaliatory conduct.

34.    As a further result of the CITY's above stated actions, Plaintiff was forced to endure a retaliatory hostile work environment and reassignment during her employment with the Department of Streets and Sanitation and has been deprived of income in the form of wages and benefits, solely because of impermissible retaliation, in an amount to be proved at trial, and has suffered, and continues to suffer emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff ORALEAN WILLIAMS, respectfully prays that this Court enter judgment in her favor and against CITY OF CHICAGO:

(a)    Declaring that the conduct of City of Chicago described herein is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, *et seq.*;

(b)    Awarding plaintiff any salary, with interest, she lost as a result of City of Chicago's conduct;

(c)     Awarding plaintiff compensatory damages, including for emotional distress, humiliation, embarrassment mental anguish;

(d)     Awarding plaintiff reasonable attorneys' fees and costs under 42 U.S.C. Sec. 2000(e)-5(k) and 42 U.S.C. §1988; and

(e)     Awarding plaintiff such other and further relief as this Court deems proper and just.

## COUNT IV-CITY
## 42 U.S.C. §1981, §1983

1-49.    Plaintiffs repeat and reallege Paragraphs 1-37 of Count I and paragraphs 31-37 of Count II, and paragraphs 30-34 of Count III as paragraphs 1-49 of this Count IV, as though fully rewritten, herein.

50.     At all relevant times, CITY empowered ADAMS as well as Streets and Sanitation supervisory personnel including but not limited to Janet Gay, Josie Cruz, ôJayö and ôRayö to establish a hostile work environment of race and gender discrimination against Plaintiff by placing each of them in a position to establish a pattern and practice of race and gender discrimination against the Department of Streets and Sanitationøs black and female employees, including plaintiff, and by failing to monitor their activities in a manner that would eliminate or prevent race and gender discrimination against its black and female employees, including plaintiff.

51.     At all relevant times, CITY further empowered ADAMS as well as Streets and Sanitation supervisory personnel, including but not limited to Janet Gay, Josie Cruz, ôJayö and ôRayö to establish a hostile work environment of retaliation by placing them in a position to establish a pattern and practice of retaliation against Department of Streets and Sanitation employees, including Plaintiff, who complain about race and gender discrimination and

retaliatory conduct, and by failing to monitor their activities in a manner that would eliminate or prevent retaliation against its employees who complain about perceived race and gender discrimination and harassment, and retaliatory practices, including plaintiff.

52.     CITY Streets and Sanitation supervisory personnel, including but not limited to ADAMS, Janet Gay, Josie Cruz, "Jay" and "Ray" each acted with discriminatory and retaliatory intent when it/they subjected black and/or female employees and allowed black and/or female employees to be subjected, including plaintiff, to a pattern and practice of discrimination and/or retaliation based upon gender and/or race, as well as good faith complaints of gender and race discrimination.

53.     At all relevant times herein, the defendants knew that the conduct as described herein was a violation of 42 U.S.C. §1981, 42 U.S.C. §1983, 42 U.S.C. 2000e, and the First and Fourteenth Amendments.

54.     All of the actions taken against Plaintiff by the Defendants or those agents, servants and/or employees acting on behalf of the CITY and referred to herein, including the race and gender discrimination and harassment, retaliatory adverse employment actions, and the approving and condoning of these actions by the CITY, was done by the Defendants while acting under color of state law and in their official capacities, and had the effect of depriving plaintiff of rights secured by the Constitution and laws of the United States, specifically 42 U.S.C. §1981, 42 U.S.C. 2000e and the First and Fourteenth Amendments, in violation of 42 U.S.C. §1983.

55.     All of the actions taken against Plaintiff by the Defendants or those agents, servants and/or employees acting on behalf of CITY and referred to herein, including the race and gender discrimination and harassment, retaliatory adverse employment actions and the approving and condoning of these actions by the CITY, was in retaliation for the exercise and/or

17

the attempted exercise of plaintiff's right to speech, press and association, in violation of the First Amendment, and/or because of plaintiff's race in violation of due process and equal protection, in violation of the Fourteenth Amendment.

56.     Additionally, CITY failed to implement any policy that it may purport to have to prevent and/or eliminate race and gender discrimination and harassment, and impermissible retaliation for employees who complain about illegal discriminatory and/or retaliatory conduct at the Department of Streets and Sanitation.

57.     The actions of the defendants or those agents, servants and/or employees acting on behalf of the Department of Streets and Sanitation, in failing to take any immediate corrective action to prevent and/or prohibit instances of race and/or gender discrimination and harassment against Plaintiff, and retaliation against plaintiff for speaking out about race discrimination, harassment, and retaliation, were carried out by sufficiently high ranking officials of the City of Chicago Department of Streets and Sanitation who either possessed or had been delegated final policymaking authority by CITY with regard to personnel issues within the Department of Streets and Sanitation, including, but not limited to ADAMS, Janet Gay, Josie Cruz, "Jay" and "Ray", as to cause these actions to constitute policy, custom or practice of CITY.

58.     The actions of the defendants or those agents, servants and/or employees acting on behalf of CITY, in failing to take any immediate corrective action to prevent and/or prohibit instances of race discrimination and harassment against Plaintiff, and/or gender discrimination and harassment against Plaintiff, condoning such conduct, and in retaliating and allowing retaliation against Plaintiff for speaking out about race and/or gender discrimination and harassment, and retaliation, were part of CITY's policy, official or unofficial, and not a departure from any policy of CITY.

59.     As a direct and proximate cause of CITY¢S systemic policy and/or custom of race and gender discrimination and harassment, and retaliation, plaintiff has been, and continues to be, deprived of her rights, privileges and/or immunities secured by the Constitution and laws, including but not limited to 42 U.S.C. §1981, 42 U.S.C. 2000e and the First and Fourteenth Amendments, in violation of 42 U.S.C. §1983.

60.     The aforementioned incidents created an intimidating, retaliating, and hostile and offensive work environment for plaintiff, by the defendant, and therefore violated plaintiff's rights under 42 U.S.C. §1981, and the First and Fourteenth Amendments, in violation of 42 U.S.C. §1983.

61.     As a result of the illegal racial and gender discrimination and harassment, retaliation and other unlawful employment practices complained of herein, plaintiff experienced, and continues to experience, loss of wages and benefits, and suffered and continues to suffer from emotional distress and mental anguish.

WHEREFORE, Plaintiff, ORALEAN WILLIAMS, respectfully prays that this Court enter judgment in favor of Plaintiff and against CITY OF CHICAGO:

(a)     Declaring that the conduct of defendant, City of Chicago described herein is in violation of 42 U.S.C. § 1981 *et seq.* and 42 U.S.C. §1983, *et seq.*;

(b)     Awarding Plaintiff any salary, with interest, she lost as a result of the conduct of defendant, City of Chicago;

(c)     Awarding Plaintiff compensatory damages, including for emotional distress, humiliation, embarrassment mental anguish;

(d)     Awarding Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. §1988; and

(e)     Awarding plaintiff such other and further relief as this Court deems proper and just.

## COUNT V
**42 .S.C. §1981, §1983-INDIVIDUAL LIABILITY**

1-49.   Plaintiffs repeat and reallege Paragraphs 1-49 of Count IV as paragraphs 1-49 of this Count IV, as though fully rewritten, herein.

50.   The aforementioned race and gender harassment and discrimination and retaliation and corresponding constitutional deprivation by ADAMS, beginning on or around May of 2014 and continuing through July of 2015, was directly caused and intended by ADAMS.

51.   The aforementioned racial and gender harassment and discrimination and retaliatory misconduct by ADAMS was intentional and performed by, the direction of and/or with the complete knowledge and acquiescence of ADAMS.

WHEREFORE, Plaintiff, ORALEAN WILLIAMS, prays that this Court enter judgment in favor of Plaintiff and against RICHARD õBUCKö ADAMS, individually,:

(a)   Declaring that the conduct of defendant ADAMS described herein is in violation of 42 U.S.C. §1981, *et seq.* and 42 U.S.C. §1983, *et seq.*;

(b)   Awarding Plaintiff, any salary, with interest, she has lost as a result of the conduct of defendant ADAMS;

(c)   Awarding Plaintiff punitive damages against defendant ADAMS;

(d)   Awarding Plaintiff, compensatory damages, including for emotional distress, humiliation, embarrassment and mental anguish, against defendant ADAMS;

(e)   Awarding Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. §1988 against defendant ADAMS ; and

(f)   Awarding Plaintiff such other and further relief as this Court deems proper and just.


**PLAINTIFFS DEMAND TRIAL BY JURY OF ALL ISSUES HEREIN**.

Respectfully submitted,

By: /s/ Seth R. Halpern

*Counsel for Plaintiffs*
Seth R. Halpern
John R. Malkinson
Meredith Buckley
MALKINSON & HALPERN, P.C.
208 South LaSalle Street
Suite 1750
Chicago, Illinois 60604
(312) 427-9600

## <u>VERIFICATION BY CERTIFICATION</u>

Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

s/Seth R. Halpern